**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KATHLEEN R. CHICCOLA,**                    Case No. 1:18 CV 2940

        Plaintiff,

        v.                                        Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.                              MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Kathleen R. Chiccola ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB in February 2016, alleging a disability onset date of December 15, 2014. (Tr. 145-46). Her claims were denied initially and upon reconsideration. (Tr. 97-100, 104-06). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 111-12). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on January 24, 2018. (Tr. 41-64). On May 29, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 23-34). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-4); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on December 21, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

<u>Personal Background and Testimony</u>

Born in 1959, Plaintiff was 58 years old at the time of the hearing. *See* Tr. 45, 145. She had past work as a licensed practical nurse (Tr. 47, 59), and left the job because she was "very, very tired" and "couldn't keep up the pace" (Tr. 51). Plaintiff believed she was unable to work due to limited strength and endurance, limited flexibility, and pain from arthritis which caused her to "hurt all the time". (Tr. 52).

Plaintiff also experienced depression. (Tr. 55). She saw counselors but found them ineffective; she did not fully disclose her depression symptoms to her general practitioner because she was embarrassed. *Id*. Plaintiff described herself as "shy" and noted she got "really nervous around a lot of people." (Tr. 56).

Plaintiff tried various prescription and non-prescription medications to alleviate her symptoms. (Tr. 53). She experienced adverse side effects with each. *Id*. ("And it seems every medication I take either doesn't work or doesn't agree with me. Even the depression medications[.]"). She used a heating pad for neck and back pain. (Tr. 56-57). Swimming, Tylenol, and ibuprofen helped alleviate the pain. (Tr. 57).

Plaintiff lived with her thirty-year-old autistic son (Tr. 46), who required some assistance managing appointments and was unable to drive (Tr. 51-52). Plaintiff performed household chores (with breaks) (Tr. 52), and grocery shopped (Tr. 54).

Plaintiff had a driver's license and drove short distances. (Tr. 47). In a typical day, she spent time in bed, made herself breakfast, went to the pool and swam "a little", watched television, ran errands, and rested in the evenings. (Tr. 51). Plaintiff "occasionally" (twice per month) spent

time with friends, but it was difficult to make the one-hour drive due to neck and back pain. (Tr. 53-54).

<u>Relevant Medical Evidence</u>

*Physical Impairments*

Plaintiff underwent an annual physical examination with her primary care physician Hardeepak Shah, M.D., in December 2015. (Tr. 250-51). Plaintiff reported chronic arthritis in both knees, back, neck, and shoulders. (Tr. 250). The physical examination did not include any musculoskeletal findings. (Tr. 251). Dr. Shah prescribed meloxicam for Plaintiff's arthritis pain. *Id*. Bilateral knee x-rays taken that month were unremarkable. (Tr. 264).

In January 2016, Plaintiff reported depression and intermittent heart palpitations to Dr. Shah. (Tr. 267). She reported exercising regularly with water aerobics but experienced palpitations with stress and "rac[ing] up a flight of stairs." *Id*. Dr. Shah ordered a 24-hour Holter monitor. *Id*.

Plaintiff began treating with cardiologist Caroline Casserly, M.D., in March 2016. (Tr. 305-08). She reported worsening palpitations that were more noticeable with exertion. (Tr. 305). Holter monitor results revealed "[r]are ventricular complexes as singles, quadrigeminy" and "[r]are supraventricular ectopics in isolation". *Id*. Plaintiff had an unremarkable examination. (Tr. 307). Dr. Casserly diagnosed palpitations, premature ventricular contractions, and chest tightness; she ordered a stress echocardiogram. (Tr. 308). The stress echocardiogram, performed in April, was negative for ischemia, but revealed Plaintiff's left ventricular diastolic function was consistent with abnormal relaxation. (Tr. 347). At an April follow-up with Dr. Casserly, Plaintiff reported worsening palpitations with chest tightening and mild dyspnea on exertion. (Tr. 348). Dr. Casserly noted Plaintiff's stress echocardiogram "show[ed] no evidence of structural heart disease or

ischemia.". (Tr. 351). She prescribed a "low dose" of Toprol because Plaintiff was "so symptomatic". *Id.*

Plaintiff returned to Dr. Shah in May 2016 for neck and back pain. (Tr. 355). Dr. Shah advised the pain was likely due to chronic arthritis. *Id.* He instructed Plaintiff to remain active, take anti-inflammatories for pain, and consult with an orthopedist. *Id.*

A June 2016 lumbar spine x-ray revealed scoliotic curvature and mild multi-level degenerative changes with vertebral body osteophytosis, as well as intervertebral disc space narrowing at L5-S1 with partial lumbarization at S1. (Tr. 398). A cervical spine x-ray taken that month revealed mild scoliosis and disc space narrowing at C5-6 and C6-7. *See* Tr. 366. A bone density scan revealed osteoporosis. (Tr. 399-400).

Plaintiff established care with spine specialist Kush Goyal, M.D., in June 2016. (Tr. 361-67). She reported a ten-year history of pain in her cervical and lumbar spine without radiation, numbness, or tingling. (Tr. 361). Dr. Goyal documented normal heel and toe walking, difficulty with tandem gait, negative straight leg raises, full upper and lower extremity strength, good reflexes, tender trapezius muscles, and full range of motion throughout her spine and shoulders. (Tr. 364-66). Dr. Goyal diagnosed poor balance, hyperreflexia, and cervical and lumbar spondylosis. (Tr. 366). He prescribed a Flexeril (a muscle relaxer), Motrin, and Tramadol and recommended physical therapy and facet injections. (Tr. 366-67).

A July 2016 MRI of the cervical spine revealed decreased disc height and signal with minimal posterior bulges, facet and uncovertebral joint degeneration indicating cervical spondylosis (without central canal compromise or spinal cord impingement/compression). (Tr. 409). Alignment, vertebral height, marrow signal, thecal sac, spinal cord signal, and caliber and posterior fossa were all normal. *Id.*

Plaintiff treated with rheumatologist Emily Littlejohn, D.O., in December 2017, reporting a history of neck and back pain. (Tr. 506). Dr. Littlejohn noted decreased range of motion in Plaintiff's cervical spine and full forward flexion with pain in the lower lumbar region. (Tr. 508). She diagnosed chronic midline low back pain with sciatica and neck pain (Tr. 511), and ordered cervical and pelvic x-rays (Tr. 512). Pelvic x-rays showed degenerative changes at the lower lumbar spine with partial sacralization of the L5 vertebral body and sacrum (left side). (Tr. 522). Cervical x-rays revealed moderate degenerative disc disease at C5-6 and C6-7 with endplate osteophytes; disc height and alignment were normal. (Tr. 528).

*Mental Impairments*

Plaintiff attended an April 2016 consultative psychological examination with Alison Flowers, Psy.D. (Tr. 328-36). She reported her chief complaints as her back – specifically arthritis, a herniated disc, osteoporosis, and scoliosis. (Tr. 328). Plaintiff detailed her family, educational, employment, and physical medical histories. (Tr. 329-31). She denied any psychiatric hospitalizations, but reported having suicidal ideation in 2007. (Tr. 331). She received mental health treatment "here and there", finding it helped "a little". *Id*. Plaintiff reported feeling depressed "daily" (Tr. 331), but did not report "problems related to panic attacks, manic symptoms, or symptoms of a thought disorder" (Tr. 332). She could dress, bathe, and groom herself, prepare food, and clean (though she needed to take a break when vacuuming or folding laundry). *Id*. Plaintiff shopped and drove herself places, including to the appointment. *Id*. She had difficulty going up and down stairs. *Id*. On examination, Dr. Flowers found Plaintiff had an open demeaner with appropriate social skills, was well-groomed and appropriately dressed. *Id*. She had intelligible speech, adequate language skills, goal-directed thoughts, a restricted affect, and normal mood. (Tr. 332-33). She reported symptoms of anxiety. (Tr. 333). Her attention and concentration were mildly

impaired due to pain or depression. *Id*. She had good insight and fair judgment. *Id*. Dr. Flowers diagnosed major depressive disorder and offered a guarded prognosis because Plaintiff had not received mental health treatment in the past 25 years. (Tr. 334).

During a July 2016 visit with Dr. Shah, Plaintiff felt "down" and reported a history of major depressive disorder. (Tr. 373). Dr. Shah observed a sad mood, but normal speech, memory, thought process, dress, and grooming. (Tr. 373-74). He prescribed Wellbutrin and referred Plaintiff to psychology. (Tr. 374).

Opinion Evidence

In March 2016, State agency physician Leon Hughes, M.D., opined Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. (Tr. 73-74). She could stand/walk or sit for approximately six hours each in an eight-hour workday and was unlimited in her ability to push and pull. (Tr. 74). Dr. Hughes found Plaintiff unlimited in her ability to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. *Id*. She could frequently climb ladders, ropes, or scaffolds. *Id*. Maureen Gallagher, D.O., concurred with these findings in September 2016. (Tr. 89-91).

In April 2016, Dr. Flowers opined Plaintiff was able to understand, remember, and carry out instructions based upon her performance during the consultative examination. (Tr. 334). In the area of maintaining attention, concentration, persistence and pace, Dr. Flowers noted Plaintiff's self-reported difficulties in communication and maintaining pace. (Tr. 334-35). Dr. Flowers observed Plaintiff was able to sustain attention and concentration during the appointment and she appeared able to perform simple tasks. (Tr. 335). She opined Plaintiff would have more difficulty with multi-step tasks, but also noted Plaintiff's reported activities of daily living often required her to perform multi-step tasks. *Id*. She concluded Plaintiff may have some difficulties responding

appropriately to pressures in the workplace due to her depressed mood and anxiety. *Id.* Dr. Flowers based this on Plaintiff's report that her symptoms had an impact in her prior workplace. *Id.* Finally, Dr. Flowers found Plaintiff able to respond appropriately to supervisors and coworkers. *Id.*

In April 2016, State agency psychologist Judith Schwartzman, Psy.D., opined Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday without interruptions from symptoms, and respond appropriately to changes in the work setting. (Tr. 75-76). Dr. Schwartzman further explained that, "[w]hen symptoms increase, she will occasionally need flexibility in work schedule, taking breaks, and pacing." (Tr. 76). She noted there was no evidence of limitation in Plaintiff's ability to remember locations and work procedures, understand, remember, and carry out simple instructions, sustain an ordinary routine, work in coordination with or proximity to others, make simple work-related decisions, maintain awareness of hazards, travel, or set realistic goals and make plans. (Tr. 75-76). Dr. Schwartzman summarized: "The [claimant] is capable of performing simple to some moderately routine complex tasks that do not require fast pace or strict quotas." (Tr. 76). Paul Tangeman, Ph.D., offered a similar assessment in September 2016. (Tr. 91-92).

Psychologist Marjorie Hoelker, Psy.D., completed a Daily Activities Questionnaire (Tr. 419-20), and a Mental Status Questionnaire (Tr. 421-23), in August 2016. Plaintiff saw Dr. Hoelker once on May 24, 2016. (Tr. 420-21). Dr. Hoelker denied knowledge of Plaintiff's daily activities, stating Plaintiff attended only a single appointment and declined additional appointments. (Tr. 419-20). Dr. Hoelker reported Plaintiff was appropriately dressed with good hygiene, maintained normal conversational flow, and had a tearful mood and flat affect. (Tr. 421). She cited Plaintiff's reports of tearfulness and depression due to a history of trauma. *Id.* Dr.

Hoelker noted Plaintiff "describes impaired ability to attend [and] focus." *Id*. Dr. Hoelker stated she was unable to offer a prognosis or functional assessment because Plaintiff only attended one appointment. (Tr. 422).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 58-63. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be. *See* Tr. 60. The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as a floor waxer, hand packager, or bagger. (Tr. 60-61).

ALJ Decision

In a written decision dated May 29, 2018, the ALJ found Plaintiff met the insured status requirements for DIB through December 31, 2019 and had not engaged in substantial gainful activity since her alleged onset date (December 15, 2014). (Tr. 25). He concluded Plaintiff had severe impairments of hyperlipidemia, arrhythmias, degenerative disc disease, arthritis, and affective disorder, but found these impairments (alone or in combination) did not meet or medically equal the severity of a listed impairment. (Tr. 25-26). The ALJ then found Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) except: frequently climb ladders, ropes and scaffolds; can perform 1-4 step tasks; tolerate routine workplace changes and any changes outside of the routine need to be gradually implemented.

(Tr. 28). The ALJ found Plaintiff was unable to perform past relevant work, was an "individual of advanced age" on the alleged onset date, and had a high school education. (Tr. 32). The ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. Thus,

the ALJ found Plaintiff not disabled from the alleged onset date through the date of the decision. (Tr. 33).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff objects to nearly every facet of the ALJ's decision. First, she contends the ALJ failed to properly evaluate the evidence. (Doc. 13, at 9-14). Within this argument, she objects (rather generally) to the ALJ's evaluation of the medical opinion evidence. *Id.* at 10-14. She further contends the ALJ ignored a 2016 MRI, *id.* at 10-11, and failed to consider whether she satisfied the criteria of Listing 12.04, *id.* at 14. Plaintiff's second argument surrounds the ALJ's credibility

assessment, and her third objects to his Step Five finding. *Id*. at 15-20. The undersigned addresses each of these arguments in turn.

Opinion Evidence

Plaintiff first tenders a very broad argument that the ALJ erred when he accorded great weight to the reviewing physicians and partial weight to the reviewing psychologists and consultative examiner. (Doc. 13, at 9-14). For the following reasons, the undersigned affirms the Commissioner's decision.

Under the regulations, there exists a hierarchy of medical opinions: first, is the treating source; second, is the non-treating source, one who has examined but not treated the plaintiff; and last, is a non-examining source, one who renders an opinion based on a review of the medical record as a whole. 20 C.F.R. §§ 404.1502, 404.1527; SSR 96-2, 1996 WL 374188, at *1. An ALJ must provide "good reasons" for the weight given to a treating source, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004), but not for a non-treating or non-examining source, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding "the SSA requires ALJs to give reasons for only *treating* source" opinions) (emphasis in original); *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions.").The ALJ is still required to weigh the opinions of non-treating and non-examining physicians under the same factors as treating physicians, including the supportability and consistency of those opinions. *See* 20 C.F.R. § 404.1527. And, even though the heightened "good reasons" explanatory requirement does not apply, "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Thus, the question is not one of "good

reasons", but rather whether the ALJ's reasoning is supported by substantial evidence. *Walters*, 127 F.3d at 528. As discussed below, the undersigned concludes that it is with respect to each physician.

*Examining Physicians*

Plaintiff argues the ALJ erred when he assigned "little weight" to her treating psychologist. (Doc. 13, at 10-11). However, the undersigned notes there is no treating psychologist opinion in the record and Plaintiff does not identify which psychologist (or opinion) she is referring to when referencing such in her brief. (Doc. 13, at 10). The only physician opinion of record to which the ALJ accorded "little weight" was Dr. Hoelker. (Tr. 31). However, she is not a treating psychiatrist as she only examined Plaintiff on one occasion. 20 C.F.R. § 404.1527; *see also* Tr. 420 ("Patient has only been seen for 1 date of service. Patient declined any additional appts."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("To begin, Dr. Biyani's opinion is not entitled to treating-source review. Reeves's medical records show that he saw Dr. Biyani only once.")[1]; *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (holding that a physician who examined the claimant only once and completed a single "physical capacity evaluation" was not a

---

1. In her Reply (Doc. 17), Plaintiff asserts the Commissioner's citation of *Reeves* for this proposition was error. In turn, she argues this Court interpreted *Reeves* to mean "that an ALJ is not required to adopt every facet of an opinion, even when it is accorded great weight" in *Maki v. Comm'r of Soc. Sec.*, 2019 WL 3082309, at *7 (N.D. Ohio). (Doc. 17, at 2). Plaintiff's citation to *Maki* is accurate, but for a different issue than discussed here. Plaintiff's *Maki* quotation comes from the ALJ's analysis of a consultative examiner's opinion. *Maki*, 2019 WL 3082309, at *4. But *Maki*, quoting *Reeves*, cites the above proposition to demonstrate that it was not error for the ALJ to both assign "great weight" to a consultative examiner and not adopt every facet of his opinion. *Id.* at *7. Plaintiff fails to explain how this is relevant to her argument or combats the Commissioner' argument. The Commissioner's *Reeves* citation is certainly more relevant – *Reeves* reinforces the notion that a single examination does not establish a treating source relationship. *Reeves*, 618 F. App'x at 275.

treating source). Assuming Plaintiff was referring to Dr. Hoelker as the "treating source", the undersigned addresses the ALJ's assessment of her opinion. He explained:

> I accord little weight to the opinion of Marjorie Hoelker, Psy.D. (13F). On August 24, 2016, Dr. Hoe[lk]er stated that her opinion was based on a one-time examination of the claimant and the claimant declined any additional appointments (13F/3). Dr. Hoe[lk]er opined that the claimant described being depressed and had an impaired ability to attend and focus (13F/4). Dr. Hoe[lk]er also opined that the claimant has a history of trauma and depression (13F). I accord this opinion little weight for the following reasons. First, review of Dr. Hoe[lk]er's opinion shows that it is based solely on the claimant's subjective statements. And second, Dr. Hoe[lk]er's opinion is based on a one-time examination of the claimant and not based on a long-term treating relationship with the claimant. Therefore, only little weight is accorded.

(Tr. 31).

Here, the ALJ first concluded Dr. Hoelker's opinion was primarily based on Plaintiff's subjective statements. *Id.* One need only look to the four corners of Dr. Hoelker's opinion to see this conclusion is supported. *See* Tr. 419-23. Dr. Hoelker was unable to answer a majority of the questions within the forms due to their limited relationship and, when she did, she merely repeated Plaintiff's descriptions of her own symptoms without elaboration. (Tr. 421-23) ("Patient describes being tearful & depressed as a result of low self-esteem & history of trauma." "Pt. describes impaired ability to attend & focus."). It is proper for an ALJ to discount a medical opinion where, as here, it is based primarily on Plaintiff's subjective symptoms and unsupported by laboratory or examination findings. *See Thomas v. Barnhart*, 105 F. App'x 715, 716 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Further, the ALJ properly considered the nature of Dr. Hoelker's limited relationship with Plaintiff. Under the regulations, the length of treatment history is another of the many factors an ALJ considers when assigning weight to a physician's opinion. *Rabbers*, 582 F.3d

at 660 (citing 20 C.F.R. § 404.1527(c)(2)). Therefore, it was not improper for the ALJ to consider that Dr. Hoelker's opinion was based on a single, limited interaction. *Smith*, 482 F. 3d at 876. Indeed, Dr. Hoelker herself specifically noted she could not describe Plaintiff's limitations due to her limited relationship with Plaintiff. *See* Tr. 422 (answering "unknown" to each question about Plaintiff's functional abilities). Moreover, Plaintiff fails to identify any specific limitation within Dr. Hoelker's opinion she contends is more restrictive than the RFC. Thus, she fails to demonstrate any error by the ALJ in considering the opinion is harmful. *See Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Plaintiff also takes issue with the ALJ's assessment of the opinion of consultative examiner Dr. Flowers. (Doc. 13, at 10). Addressing Dr. Flowers's opinion, the ALJ explained:

> I accord partial weight to the opinion of consultative examiner Alison Flowers, Ph.D. (8F/8). On April 21, 2016, Dr. Flowers opined that the claimant has the ability to understand, remember and carry out instructions (8F/8). Dr. Flowers opined that the claimant may have some difficulties in maintaining persistence and pace but appeared able to sustain attention and concentration (8F/8). Dr. Flowers also opined that the claimant appeared able to respond appropriately to supervisors and coworkers (8F/9). Finally, Dr. Flowers opined that the claimant may have some difficulty responding appropriately to work pressures (8F/9). I accord Dr. Flowers's opinion partial weight, as the evidence shows that the claimant is slightly more restricted in her ability to concentrate, persist or maintain pace. Specifically, the evidence shows that when the claimant is stressed, she makes frequent mistakes (8F).

(Tr. 31). Plaintiff does not develop a specific argument as to Dr. Flowers, including which limitations should or should not have been adopted by the ALJ, only that it was error to assign her opinion partial weight. (Doc. 13, at 10-11). Here, the ALJ assigned the opinion partial weight because he found Plaintiff *more* limited in the area of concentration, persistence, and pace due to her "frequent mistakes" while, at the same time, incorporating Dr. Flowers's other opined limitations into his RFC. (Tr. 31). He cited Dr. Flowers's examination wherein she found

Plaintiff's attention and concentration were mildly impaired due to pain or depression. (Tr. 333). This caused her to make minor mistakes during serial 3s. *Id.* The ALJ's observation here is supported and it was not error for him to assign Dr. Flowers partial weight because her opinion was inconsistent with these examination findings. *See* 20 C.F.R. § 404.1527(c). And, as noted, the ALJ incorporated Dr. Flowers's other opined limitations into his RFC. *Compare* Tr. 334-35 *(*Dr. Flowers finding Plaintiff could understand, remember, and carry out instructions and have "some difficulties" responding to work pressures), *with* Tr. 28 (the RFC finding Plaintiff could perform 1-4 step tasks and tolerate routine changes in her workplace as well as any changes outside her routine, if they were gradually implemented). As such, the undersigned affirms.

*State Agency Physicians*

Plaintiff also argues it was error for the ALJ to assign "great weight" to the State agency physicians, and "partial weight" to the State agency psychiatrists, though again, she does not specify any particular limitation that should or should not have been included in the RFC. (Doc. 13, at 10). As to the physicians, Drs. Hughes and Gallagher, the ALJ accorded their opinions "great weight" because they were consistent with the medical evidence of record, including medical imaging which revealed "degenerative changes to the cervical and lumbar spine but normal heart studies and knee x-rays." (Tr. 31). In support, the ALJ cited exhibits which include unremarkable bilateral knee x-rays (Tr. 264), x-rays showing degenerative changes to the cervical and lumbar spine (Tr. 366, 398), and a relatively benign heart examination (Tr. 347). Consistency is a regulatory factor the ALJ must consider, 20 C.F.R. § 404.1527(c)(4), and as explained above, his analysis regarding the State agency physician opinions is supported by this evidence.

As to the psychiatric consultants, the ALJ assigned them "partial weight" because:

> Both Dr. Schwartzman, on initial determination, and Dr. Tangeman, on reconsideration, opined that the claimant had mild restriction of activities of daily

living, mild difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence or [pace] (1A/7; 3A/8-9). I accord these opinions great weight, as they are generally consistent with the medical evidence. Specifically, the record shows that the claimant makes mistakes when stressed but is able to perform household chores and enjoys interacting with friends (8F; 13F). I accord these opinions less weight with regard to the occasional need for flexibility in work schedule, taking breaks, and pacing as this limitation is not well defined and is vocationally vague.

(Tr. 31). Here the ALJ assigned great weight to Drs. Schwartzman and Tangeman's opinion that Plaintiff had mild restriction in various functional domains. *Id*. He concluded this limitation was consistent with the record where Plaintiff made mistakes when stressed, but was able to perform household chores and enjoy friends. *Id*. The ALJ's conclusion is supported by the record. *See* Tr. 333 (Dr. Flowers's report detailing Plaintiff's minor mistakes on examination while distracted by her pain (or depression)); Tr. 332 (Plaintiff describing her activities of daily living); Tr. 53-54, 329 (Plaintiff describing her interactions with friends). The ALJ then accorded less weight to the doctors' opinion regarding work schedule, breaks, and pacing due to vagueness. (Tr. 31) (citing Tr. 76, 92 ("When symptoms increase, she will occasionally need flexibility in work schedule, taking breaks, and pacing.")). While these statements certainly suggest some limitation, the ALJ's determination they were too vague to translate into work-related restrictions is appropriate. *See, e.g.*, *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 1102684, at *4 (N.D. Ohio) (vagueness of opinion is valid reason for discounting); *Pugh v. Comm'r of Soc. Sec.*, 2015 WL 419000, at *14 (N.D. Ohio) ("In light of her qualified opinion, the ALJ's decision to discount the opinion based on its vagueness is sufficiently clear and supported by the evidence.").

Again, Plaintiff does not argue which limitations by any of the State agency professionals should or should not have been adopted.[2] She only argues the ALJ erred by assigning them great

---

2. Because Plaintiff does not develop a clear argument, it is likely waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible

and partial weight. Because the ALJ's assessment of each State agency physician of record is supported by substantial evidence, the undersigned affirms.

Listing 12.04

Within her "evaluation of evidence" argument, Plaintiff contends the ALJ failed to properly consider whether she met the criteria of Listing 12.04 (depressive, bipolar and related disorders). This argument is quite brief and underdeveloped. Nevertheless, the undersigned addresses it here and affirms.

At Step Three in the ALJ's evaluation process, the applicant may show that her impairment meets or equals a listed impairment, in which case, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); *see Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments defines impairments that the agency considers "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 404.1525(a); *see Sullivan v. Zebley*, 493 U.S. 521, 531–32 (1990). A claimant's impairment must meet every element of a listing before the Commissioner will conclude that she is disabled at Step Three. *See* 20 C.F.R. § 404.1520(d); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove all elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). To do this, she "must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see also Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013) ("A

---

argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995). Nevertheless, the undersigned addresses Plaintiff's concern and finds the ALJ's analysis supported by substantial evidence.

substantial question about whether a claimant meets a listing requires more than . . . a mere toehold in the record on an essential element of the listing."); *Pasiak v. Comm'r of Soc. Sec.*, -- F. App'x --, 2019 WL 6698136, at *2-3 (6th Cir.) (citing *Sheeks*, 554 F. App'x at 641*; Smith-Johnson*, 579 F. App'x at 432).

Mental disorders under Listing 12.00 have three paragraphs, designated A, B, and C, and a plaintiff's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00 (A)(2)(a)-(c). Paragraph A of each Listing outlines the medical criteria that must be present in a claimant's medical evidence, paragraph B provides the functional criteria used to assess how a claimant's mental disorder limits her functioning, and paragraph C outlines the criteria used to evaluate "serious and persistent mental disorders". *Id*. The paragraph A criteria under Listing 12.04 (depressive, bipolar and related disorders) provide:

> These disorders are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning. Symptoms and signs may include, but are not limited to, feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00(B)(3)(a).

Paragraph B criteria are used "to evaluate how [a claimant's] mental disorder limits [her] functioning" and [t]hese criteria represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00(A)(2)(b). The four areas of functioning under paragraph B are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* To satisfy the paragraph B criteria, a plaintiff's mental disorder must result in "extreme" limitation of one, or

"marked" limitation of two, of the four areas of mental functioning. *Id*. The paragraph C criteria are not at issue here. They cover "serious and persistent" mental disorders which must last at least two years and are evidenced by intensive therapies and/or hospitalizations. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00(G)(2)(a)-(c).

Here, the ALJ expressly considered the paragraph B criteria and determined Plaintiff had mild limitation in the areas of understanding, remembering, and applying information; interacting with others; and adapting and managing oneself. (Tr. 27). He found she had moderate limitation in the ability to concentrate, persist, and maintain pace. *Id*.

Plaintiff cites the relevant law and recounts the ALJ's findings. (Doc. 13, at 14). She then recounts Dr. Flowers's diagnoses, symptoms she reported to the consultative examiner, and the State agency physicians' opinions that she would "occasionally need flexibility in [her] work schedule, taking breaks, and pacing." *Id*. (citing Tr. 27, 76, 334). This is as far as her argument goes. She does not develop any arguments regarding which paragraph B criteria she believes warranted a greater limitation, nor does she demonstrate how she meets said criteria. As noted, at Step Three, Plaintiff bears the burden to prove she satisfies each element of a listing by pointing to specific evidence. *King*, 742 F.2d at 974; *Smith-Johnson*, 579 F. App'x at 432. She falls far short of that mark here and the undersigned affirms.

Subjective Symptom Analysis

Plaintiff next argues the ALJ's subjective symptom analysis is unsupported by substantial evidence. Specifically, she alleges the ALJ chose testimony which supported his conclusion she

was not credible, and ignored the testimony which did not. (Doc. 13, at 17). The undersigned affirms.

When a claimant alleges impairment-related symptoms, the Commissioner follows a two-step process to evaluate those symptoms. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2-8.[3] First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, *e.g.*, pain. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3). *Id.* at *7-8. Those factors include daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other

---

3. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated May 29, 2018 and thus SSR 16-3p applies. SSR 16-3p clarifies the language of the pre-existing standard in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'" *Huigens v. Soc. Sec. Admin.*, 718 F. App'x 841, 848 (11th Cir. 2017) (quoting *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)). Both rulings refer to the two-step process in 20 C.F.R. § 404.1529(c).

symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although the ALJ must "consider" the listed factors, there is no requirement that he discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that "an administrative law judge's credibility findings are virtually unchallengeable". *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation omitted). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

Here, the ALJ correctly identified the two-step process (Tr. 28), summarized Plaintiff's testimony (Tr. 28-31), and offered his assessment of her subjective physical symptoms:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> ***
>
> In sum, the above residual functional capacity assessment is supported by medical imag[]ing showing degenerative changes in the claimant's cervical and lumbar spine and consultative examination notes detailing issues with stress. However, normal strength and steady gait and the lack of treatment and medication for her various physical and mental impairments indicates that the claimant may not be as limited as she purports.

(Tr. 29, 31-32). The undersigned finds this credibility assessment sufficient as it addresses many of the above-listed regulatory factors and is supported by substantial evidence.

In the second paragraph quoted above, the ALJ summarizes several pages of discussion where he addressed Plaintiff's symptoms and medical evidence which contradicted her reports of debilitating symptoms. *See* Tr. 28-31. For example, within his discussion, the ALJ observed Plaintiff had relatively mild observations in her medical records. *See* Tr. 264-66 (normal gait and lower extremity strength); Tr. 364-66 (negative straight leg raises, full upper and lower extremity strength, good reflexes, tender trapezius muscles, and full range of motion throughout her spine and shoulders). He also cited a lack of treatment and medication for her various physical and mental impairments. (Tr. 31-32). This observation is also supported by the record as to Plaintiff's mental impairments, as the only treatment or examination by a mental health professional included in the record are the consultative examination and Dr. Hoelker's single visit; Plaintiff also reported she was no longer on any prescription medication for her mental conditions. *See* Tr. 330 ("The claimant reports that she is taking the St. John's Wort for depression."). As to Plaintiff's physical impairments, at the hearing, she testified to relying on conservative treatments such as a heating pad (Tr. 56-57), and over-the-counter medications including ibuprofen, fish oil, and glucosamine for pain relief (Tr. 53). The ALJ rightly considered the type and effectiveness of Plaintiff's medications as well as her non-medicinal treatments when assessing her credibility. 20 C.F.R. § 404.1529(c)(3).

The ALJ also cited unremarkable knee x-rays, Tr. 30 (citing Tr. 264, 274), and cervical spine x-rays which revealed moderate changes, Tr. 30 (citing Tr. 528). As a result, he found "that the claimant would be limited in her ability to lift, carry, and climb." (Tr. 30). Consideration of this objective medical evidence is also proper under the regulations.[4] 20 C.F.R. § 404.1529(c)(2).

---

4. Plaintiff argues the ALJ erred by not discussing the 2016 MRI of her cervical spine which, she contends, contradicted the ALJ's finding she could work at the medium exertional level. (Tr. 409); (Doc. 13, at 10). However, as Commissioner points out, Plaintiff fails to argue *how* the findings

While the ALJ did not discuss every regulatory factor, there is no requirement that he do so. *White*, 572 F.3d at 287. Because the subjective symptom assessment touched on many of the factors and the assessment is supported by the above-cited evidence, the undersigned must affirm.

Step Five

Finally, Plaintiff frames her last argument as a Step Five argument. To meet the burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). Importantly, the hypothetical must accurately encompass only the limitations that the ALJ found credible. *Varley*, 820 F.2d at 779.

Plaintiff's argument here does not challenge the VE's testimony, nor the ALJ's reliance upon it. (Doc. 18, at 18-20). Instead, she takes issue with the limitations he chose to include (or omit) in the hypotheticals posed to the VE. *Id.* The ALJ offered the VE a hypothetical at the

---

within this MRI warrant greater limitation than found by the ALJ. Moreover, though Plaintiff is correct the ALJ did not discuss the MRI specifically, he referenced the exhibit (12F) where the MRI record is found, indicating he reviewed it. *See* Tr. 25; *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). The ALJ also discussed other medical imaging of Plaintiff's cervical spine and explicitly considered it when rendering his decision. *See* Tr. 29-30 ("X-rays of the claimant's cervical spine showed mild scoliosis and disc space narrowing at C5-6 and C6-7[.]"). As such, there is no error.

January 2018 hearing which included the limitations he found credible[5]. (Tr. 60); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). In response, the VE provided three jobs available in the national economy which the hypothetical person could perform. (Tr. 60-61). Because the undersigned finds the hypothetical question posed to the VE here matches the limitations the ALJ found credible and ultimately incorporated into the RFC, there is no Step Five error. *Compare* Tr. 28 (RFC determination); *with* Tr. 60 (hypothetical posed to the VE).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and affirms that decision.

 s/ James R. Knepp II
United States Magistrate Judge

---

5. As discussed, the ALJ's credibility analysis is supported. The limitations posed to the VE, and ultimately included in the RFC, are supported by his credibility analysis, as well as his assessment of the opinions from the physicians of record and Listing 12.04 – all which have been fully addressed above. Plaintiff repeats some of her Step Four challenges and misplaces them here under Step Five. She again argues the ALJ failed to take into account her psychological limitations, spinal problems, and dyspnea. (Doc. 13, at 18-19). A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations", 20 C.F.R. § 404.1545(a)(1), and such a determination is expressly reserved to the Commissioner, *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527, 404.1546. The Court must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ" even if substantial evidence or indeed a preponderance of the evidence *also* supports a claimant's position. *Jones*, 336 F.3d at 477. Though Plaintiff points to evidence which she believes support a greater RFC, as thoroughly discussed above, the RFC is supported by the physicians of record, imaging, and Plaintiff's testimony. As such, it must be affirmed.

24